[See Case No. 11,555.]

## Case No. 17,425.

### WEST v. SILVER WIRE & SKIRT MANUF'G CO.

[5 Blatchf. 477; 3 Fish. Pat. Cas. 306; Merw. Pat. Inv. 320.] [1]

Circuit Court, S. D. New York. Sept. 18, 1867.

PATENTS—INVENTION—INFRINGEMENT—SKIRT AND BUSTLE STIFFENERS.

1. The patent granted to Edward F. Woodward, June 16th, 1857, and reissued September 29th, 1857, for "improvements in stiffening ladies' skirts, or bustles, and other articles of dress," claims the curving of the material into a spiral form, either with or without a core of a flexible character.

2. Whether a hoop so formed is patentable, in view of the prior existence, in stringed musical instruments, of strings formed of a cat-gut core, with metallic wire wound around it in a spiral form, quere.

3. In said patent, the elasticity of the hoop is due, almost wholly, to the spiral wire.

4. A hoop made of a plain strip of steel, covered with a fine, flexible, iron wire or thread, tinned or silvered, is not an infringement of said patent. In such hoop, the wire coating is not the hoop, but the strip of steel is the hoop, and the patent is for a hoop, and not for the covering of a hoop.

[This was an action on the case for the recovery of damages for the infringement of letters patent for "improvements in stiffening ladies skirts or bustles, and other articles of dress," granted to Edward F. Woodward, June 16, 1857 [No. 17,602], reissued September 29, 1857 [No. 501], and assigned to plaintiff [Joseph J. West]. The case was tried under a submission of the law and facts to Judge Shipman under the act of March 3, 1865 [13 Stat. 533]. The claim of the original patent was as follows: "The employment of the spiral or cord for stiffening ladies skirts, etc., together with the saturation thereof in the manner set forth, and for the purposes specified."] [2]

John B. Staples, for plaintiff.

George Gifford, for defendant.

SHIPMAN, District Judge. [On June 16, 1857, a patent was issued to Edward F. Woodward, of Brooklyn, New York, for "certain new and useful improvements in stiffening ladies skirts or bustles, and other articles of dress." This patent was soon surrendered on the alleged ground that it was inoperative because of a defective specification, and amended specification filed, and on September 29, 1857, a reissue was granted. Afterward, and before the commencement of this suit, this reissued patent was assigned to the present plaintiff, who has instituted this action of law thereon, charging the defendants with infringement, and claiming

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel Fisher, Esq., and here compiled and reprinted by permission. The statement is from 3 Fish. Pat. Cas. 306, and the syllabus and opinion, except as noted, are from 5 Blatchf. 477. Merw. Pat. Inv. 320, contains only a partial report.]

[2] [From 3 Fish. Pat. Cas. 306.]

damages therefor. The defendants pleaded the general issue. The issue was closed to the court by stipulation, under the recent act of congress, authorizing the parties thus to waive a jury and submit the question of fact as well as of law to the court.] [2]

In view of the result at which the court has arrived, no comparison of the original specification with that of the reissue is necessary here. The case will, therefore, be considered exclusively with reference to the latter. This specification says: "Heretofore, the mode adopted, in the present fashion of hooped skirts, to set them off, has been, to form the hoops of whalebone in strips, curved into hoops, or rattan, or brass or steel strips, and sometimes coarser and heavier materials. All of these, as employed before my invention, were defective. They were rigid in outline, and do not permit an easy flow of the drapery of a lady's dress, so essential to the beauty of costume; and, when a dress thus supported is acted upon by the wind, such hoops show conspicuously and inelegantly; besides which, in sitting down, it is impossible, with such hoops, to gather the dress in, and, by severe compression, the hoops are bent or broken, so as to spoil their shape. I effectually remedy these defects by my improvements, and form a light, pliable, elastic and buoyant hoop, which has all the necessary powers of extension for the purpose, and, at the same time, an elasticity and pliability not found in hoops heretofore found in market. The nature of my invention consists in forming hoops of spiral wire, strips of rattan, whalebone, or other suitable material, either with or without the interior support of a cord or strip of any kind, which hoops, when inserted in ladies' skirts shall have the effect of expanding said skirts, while they can be compressed, or bent short, without serious injury to their configuration. The construction is as follows: I take thin, narrow strips of rattan, (calamus ratang,) or whalebone, or metallic wire, or other stiff elastic material, proper for the purpose, and wind it round a cord of hemp or other material, or I form it into a spiral on a proper mandrel of any kind, making it into a cord of spiral construction. * * * The centre of this hollow spiral may be filled with such material as shall be found convenient, or it may be used without any, although I deem the centre support best. So, the spiral may be formed of one or more strands, without changing the device. When rattan strips are used, they are steamed, to soften them, before forming, and, after forming, they are dried, which sets them in place. To render this cord, thus formed, water-proof, I saturate it with a solution of gum-lac, which adds increased stiffness and durability, and prevents the material becoming limber by wear. Having thus fully set forth my new hoop for ladies' skirts, and the various modifications thereof, and the manner of making the same,

what I claim as new, and for which I desire to secure the exclusive right, is the constructing hoops intended for ladies' dresses, substantially as and for the purposes set forth, consisting of a spiral formed of any proper material, metallic or vegetable, as described, with or without a core to support the same, which can be bent into the form of a hoop, and inserted into ladies' skirts, as hereinbefore fully made known."

The above paragraphs contain all that it is material to cite from the specification. It will be seen, by referring to the description of the state of the art and the defects to be remedied, as set forth in the first paragraph, that mere steel, brass, whalebone, or rattan strips, formed into hoops, or combined with a covering of any kind, are not claimed. Hoops made of the materials mentioned were old and well known. These materials were only claimed when curved into a spiral form, either with or without a core, or central cord, of a flexible character. The specimen presented on the trial, as an illustration of the invention covered by the patent, was a brass wire, in the form of a spiral, having a thread of cat-gut running through, forming a core. Whether such a hoop would be patentable, in view of the state of the mechanic arts, need not be now determined. But it may be remarked, as it is familiarly known, that the large strings of the bass viol and other stringed musical instruments, are nearly identical with this cord which formed the hoop of the skirt presented on the trial as one manufactured under this patent, with the exception, that the wire of the skirt hoop was heavier and stiffer than that on the viol string, and, therefore, more elastic. Both, however, had the same combination, and the same mechanical construction. Whether such an article, by simply using a stiffer wire, and inserting it in a lady's skirt in a circular form, could be legally the subject of a patent, without claiming it in combination with some new element, or as a part of some new combination, or whether it is the application of an old thing to a new use, and, therefore, not patentable, does not arise properly on the pleadings, and, therefore, will not be decided.

As already stated, the article presented on the trial, as an illustration of Woodward's invention, was a brass wire, in spiral form, with a cat-gut core. The elasticity of the hoop is almost wholly due to the spiral wire, the flexible core operating merely as a support to the spiral which encircles it. The core gives it greater coherence and firmness, and would tend to prevent it from stretching and thus opening the coil. But the patent does not claim the core as an element of the invention. It contemplates the use of the spiral without the core, though the patentee deems the presence of the latter preferable. The patent properly claims an elastic hoop consisting of a spiral formed of any proper material, either with or without a core. The body of the infringing hoop is made, not of a

---

[2] [From 3 Fish. Pat. Cas. 306.]

spiral wire or spring, but of a plain strip of steel. This steel is, however, covered with a fine flexible iron wire or thread, tinned or silvered, and wound around it spirally. The main body and elasticity of this hoop reside in the steel strip, which of itself, forms a spring. This strip alone constitutes a hoop, when curved in a circle. In other words, as the defendants use it, it is the old steel hoop, covered with fine tinned or silvered wire. This hoop, without the covering, is recognized in the specification as existing prior to the invention of the patentee.

Now, the patent is for a hoop, and not for the covering of a hoop. What was new in the alleged invention, if anything in it was new, was not covering hoops already well known, but forming hoops of spirals made from metal or vegetable strips. In such hoops, the core or central thread was no essential part of the invention, for they were to be made with or without it. The spiral wire or spring was the principal, and the only essential structure. But, in the alleged infringing article, the steel strip or spring is the principal thing. Without it, the wire coating would be good for nothing in a skirt. It would be spiral in form and flexible, but it would have almost no elasticity, and possess no adequate power to extend the skirt. This wire coating is, in no just sense, a hoop in the form of a spiral spring, bent into a circle. It is only an appendage or covering to the steel strip, which is the real hoop. It gives the latter greater neatness and finish, but does not add appreciably to its flexibility, or to its elasticity or expanding quality. It does not stand in the same relation, or possess the same practical qualities, or perform the same functions that are claimed for the metallic or vegetable spirals of the patentee, and is, therefore, no infringement of the rights of the plaintiff under this patent.

There must be a judgment for the defendants.